## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| CAROL A. MCDONEL, | Civil No. 10-4510 (JRT/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT** |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | |
| Defendant. | |

Alesia R. Strand and Thomas J. Beedem, III, **BEEDEM LAW OFFICE**, 200 South 6th Street, Suite 1450, Minneapolis, MN 55402, for plaintiff.

Eric C. Tostrud and Scott Moriarty, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Ave South, Suite 2200, Minneapolis, MN 55401, for defendant.

Plaintiff Carol A. McDonel brings this action under the Employee Retirement Insurance Income Security Act of 1974 ("ERISA"), seeking long-term disability ("LTD") benefits under Defendant Hartford Life and Accident Insurance Company's ("Hartford's") insurance policy. McDonel suffers from back and knee injuries that she claims prohibit her from performing her occupation. Both parties seek summary judgment regarding McDonel's entitlement to benefits. Because Hartford gathered inadequate information and thereby abused its discretion in denying McDonel LTD benefits, the Court remands this case to Hartford for further proceedings in accordance with this opinion.

# BACKGROUND

## I.    McDonel's Work and Health History

McDonel began working at Andersen Corporation ("Andersen") in 1983.  (LTD Insurance Claim File, Pl.'s Ex. 1, Docket No. 19, at HART1.)  She was employed there as a "Value Stream I Associate."  (HART160.)  As a Value Stream I Associate, she assisted with window assembly in a manufacturing shop.  (HART109-11, 160.)

In 2001, McDonel suffered a low back injury that led to a lumbar fusion surgery at L4-5 and L5-S1.[1]   The hardware from this surgery was removed in July 2006. (HART105-06; 160-62.)  McDonel has a long history of back problems due to her injury. (*See* HART9.)

The record indicates that Andersen may have provided adjustments to McDonel's job for fifteen years because of her back injury.  (HART3, 9.)  There is no evidence, however, as to the nature of these adjustments.  The record also indicates that McDonel worked "regular duty," but this term is not defined.  (HART142, 160.)

McDonel received permanent job-related restrictions in 2007, imposed by Dr. Thomas Rieser, because of her back problems.  (HART80-81, 113.)  Dr. Rieser stated that McDonel should work only on "light duty" with "no frequent bending, lifting, or twisting."  He also stated that she should "stretch/change position every 30 minutes," that she could lift/carry up to twenty-five pounds, and that she was capable of sitting, standing, and walking for six hours per day.  (*Id.*)  It is unclear if these restrictions

---

[1] The record indicates that McDonel may have also suffered a back injury in 1991. (HART9.)

required adjustments in McDonel's job.  (*See* HART5, 18.)  McDonel worked with her 2007 restrictions until August 2009.

## II.     Andersen's Threat of Termination

On August 25, 2009, Andersen Corporation sent McDonel a letter threatening to terminate her employment because of her physical restrictions.  The letter stated:

> Your permanent restrictions prevent you from performing the essential functions of the Value Stream I position, with or without reasonable accommodation.  Andersen's efforts to place you into a regular job within your permanent restrictions have been exhausted.  At the current time, there are no positions available that accommodate[] your restrictions . . . It is your responsibility to find another position with Andersen . . . [I]f you are unable to find a regular position within 60 days from the date of this letter your employment will end.

(HART134.)  The letter further stated that Andersen would place McDonel on a sixty day leave.  (*Id.*)  The last day that McDonel worked at Andersen was August 26, 2009.  (*See* HART161.)  McDonel was thereafter approved for leave under the Family Medical Leave Act through January 13, 2010.  (HART154.)

Hartford's notes indicated that Andersen sent this letter to McDonel because "there were changes in" Andersen and Andersen "was no longer able to accommodate [McDonel's] permanent [work] restrictions" due to her physical limitations.  (HART9.)  McDonel apparently told Hartford that the "new rotating jobs at work" were "not within her permanent restrictions."  (HART10.)  Nothing in the record explained this alleged new rotating system, however.  Andersen's August 25 letter stated nothing about a new "rotating" system and discussed only McDonel's inability to perform the Value Stream I position.  (HART134.)

### III.   McDonel's Worsening Symptoms

Shortly after Andersen placed McDonel on leave, on September 11, 2009, McDonel visited Steven J. Lawson, PA-C,[2] and Dr. Rieser.  (HART95.)  Lawson and Dr. Rieser noted the following:

> [McDonel] has done well until recently.  She has had an increase in her symptoms.  Her back pain is quite debilitating now.  She can barely function at home let alone at work . . . Two views of the lumbar spine were obtained . . . She does have significant degeneration at L3-4 which has progressed since her last films which were reviewed today from 2006. Diagnosis: Progression of L3-4 disc degeneration with significant endplate sclerosis and kyphosis at this level.

(*Id.*)  Lawson and Dr. Rieser recommended an MRI and epidural steroid injections, and instructed McDonel to remain completely off work from September 11, 2009 until January 13, 2010.  (HART87-89.)

McDonel's MRI in November 2009 indicated a loss of intervertebral disc space height, as well as significant disc space narrowing, bulging, and bone-on-bone and stenosis producing low back and radiating hip, buttock, and leg pain.  (HART90, 106-07, 124.)  McDonel reported that she "ache[d] all the time" in her back and thigh and was "unable to work" due to the pain.  (HART3, 93.)  She received an epidural steroid injection that provided her with no relief.  (HART124.)  Dr. Rieser stated that a surgery at the L3-4 level might help.  (*See id.*)

Although Dr. Rieser recommended back surgery, McDonel declined because, she claims, she had been advised to forego surgery until her knee improved.  (HART7, 10.)

---

[2] Lawson is a physician's assistant.

- 4 -

McDonel visited a different physician, Dr. Nicholas G. Weiss, for problems with her left knee.  (HART8, 133.)

### IV.    McDonel's New Work Restrictions

On January 13, 2010, Dr. Rieser indicated that McDonel was ready to return to work but imposed numerous new restrictions on McDonel: no static positions; no more than one to three hours per day of bending, twisting, turning, kneeling, squatting, or overhead reaching; no operating of forklift or vibrating tools; a maximum of fifty pounds pushing or pulling, and the weight must be on a cart with wheels; only occasional driving and stair climbing; and avoidance of ladders.  (HART85-86, 125.)  Dr. Rieser also reiterated the same permanent restrictions that had been in place in 2007.  (HART92, 125.)

### V.    McDonel's Application for LTD Benefits

Hartford insured McDonel under Group Long Term Disability Insurance Policy No. GLT-675805.  On February 23, 2010, McDonel submitted an application for long-term disability benefits under this policy.  (HART160-63.)  In her application for LTD benefits, McDonel stated that she was applying for benefits because a "permanent weight restriction" prevented her from doing her job.  (HART11, 161.)

####     A.    Critical Terms of LTD Policy

Hartford's LTD policy possessed the following critical terms:

**Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of . . . Your Occupation . . . .

* * *

**Your Occupation** means Your Occupation as it is recognized in the general workplace.  Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location.

* * *

**Essential Duty** means a duty that

    (1)     is substantial, not incidental;

    (2)     is fundamental or inherent to the occupation; and

    (3)     cannot be reasonably omitted or changed.

Your ability to work the number of hours in Your regularly scheduled work week is an Essential Duty.

(HART43-47.)


## B.   Information Hartford Obtained about McDonel

Ann Simpson, Ability Analyst with Hartford, initially handled McDonel's claim. (HART156-57.)  Simpson requested some of McDonel's medical records as part of her investigation, including Dr. Rieser's work restrictions from 2007 and 2010.  There is no evidence that Simpson requested Dr. Weiss' records to obtain more information about McDonel's knee or that she consulted with other physicians.

On March 1, 2010, Simpson sent an e-mail to Andersen requesting the following information: a job description for McDonel, a Physical Demands Analysis ("PDA")[3] for McDonel, a list of accommodations made to McDonel's job, and information on when

---

[3] The record does not define a PDA, but a PDA likely would have included a description of the physical demands associated with McDonel's job.

Andersen implemented these accommodations.   (HART159.)   Andersen informed Simpson that a PDA existed for McDonel's occupation.  (HART7.)

On March 11, 2010, Simpson sent another e-mail to Andersen indicating that she had found a short job description for McDonel.  (HART109.)   It is unclear where Simpson obtained this description and if Andersen viewed it as an accurate and complete description of McDonel's job duties.  The description stated that: McDonel assembled window models on a waist-high work table, McDonel was required to extend her elbow greater than 4-6 inches from her body at or below chest height "occasionally," McDonel was required to use battery operated drills and glue guns "on a frequent basis" and did not need to reach over her head to obtain these tools, and McDonel would "rarely" pick supplies from shelving behind her work table at a maximum of 56" height.  (*Id.*)  The description also identified the presence of a rolling cart with window models measuring 55" inches high, but did not explain what task McDonel performed in relationship to the cart.  (*See id.*)  Simpson admitted in this same e-mail that an "actual PDA [for McDonel] was never completed."  (*Id.*)  Simpson also admitted that she did not know the amount of weight requirement for "Lift/Carry/Push/Pull" applicable to McDonel's position – a critical piece of information, because McDonel had stated that a "permanent weight restriction" associated with her job was at least one reason she could no longer perform it.  (*See* HART11, 161, 109.)

Simpson further obtained a two-page document describing duties associated with the "Corner Section Line" at Andersen.  (HART110-11.)  It is unclear from the face of the document what it purports to describe.  (*See id.*)  At oral argument, Hartford indicated

that this document provided one example of a task that a window assembler performs, and that this task was likely a representative example of one of McDonel's duties.

## C.    Denial of Benefits

On April 13, 2010, Hartford informed McDonel that it had denied her claim for LTD benefits.  (HART79-82.)   In its denial letter, Hartford stated that McDonel was not disabled because she could perform the essential duties of her occupation.  (HART79, 81.)  Hartford determined that nothing had changed to prevent McDonel from performing the same occupation that she had performed, with restrictions, for the previous fifteen years.

Specifically, the letter stated, "The Report of Workability signed by Dr. Thomas Rieser on January 18, 2010, indicated that you were released to return to work on January 13, 2010 with **the same restrictions and limitations** as outlined on the April 7, 2007 [Report] of Workability."  (*Id.*) (emphasis added).  (*See also* HART5.)  Because McDonel had been working full time with the Dr. Rieser's restrictions from 2007 "for at least the past 15 years," "this job would be considered Your Occupation."  (HART81.)

On April 16, 2010, McDonel informed Simpson that she was completely removed from work due to her knee problems.[4]  (HART4.)  There is no evidence that Simpson requested records confirming this fact.

---

[4] The record contains almost no information about McDonel's knee problems or how the knee problems would affect her occupation.

### D.    Appeal

On April 19, 2010, McDonel appealed the denial of her LTD benefits.  (HART67.)

In doing so, she stated:

> I am appealing your decision due to the fact that my permanent restrictions
> from April 7, 2007 and the new restrictions as of 1/18/2010 from
> Dr. Thomas Rieser are not the same and that he has add[ed] additional
> restriction[s] in the Comments found on my Workability Form: Push/Pull
> 50lb, Maximum, Cart with Wheels, Occasional Stair Climbing, Avoid
> Ladders.   I will be faxing you this letter along with a copy of my
> Workability Form Dated 01/18/10 by Dr. Thomas Dr. Rieser.

(*Id.*)

Angie  Ager,  Appeal  Specialist  with  Hartford,  handled  McDonel's  appeal.

(HART64.)  Ager sent a letter denying McDonel's appeal on May 11, 2010, twelve days

after the appeal was filed.  (HART63-64.)  The letter stated, in part, the following:

> The information in your claim file indicates that your back condition has
> required  work  restrictions  for  several  years.    As  such,  **your  modified
> position is considered Your Occupation as it pertains to the review of
> your  eligibility  for  LTD  benefits**.    According  to  the  information  in  the
> claim  file,  you  ceased  working  as  of  August  26,  2009  because  your
> Employer  determined  that  they  could  no  longer  accommodate  your
> restrictions and not because you were medically precluded from performing
> Your Occupation.   In order to be eligible for LTD benefits, it must be
> shown  that  you  were  unable  to  perform  the  Essential  Duties  of  Your
> Occupation as of the date you ceased working and throughout and beyond
> the policy's Elimination Period.  The medical information in our claim file
> shows  that  there  has  been  no  significant  change  or  worsening  of  your
> condition which would have prevented you from performing the Essential
> Duties of Your Occupation.  While you reported an increase in back pain
> for  which  your  received  an  epidural  injection,  **you  also  chose  not  to
> pursue  additional  treatment** and it does not appear that your medications
> have required adjustment despite your reported increase in pain.
>
> Although you assert that the restrictions outlined by Dr. Rieser in January
> 2010 are different from those provided in April 2007, a 50 lb. push/pull
> restriction is consistent with a 25  lb. lifting restriction, or a light level

occupation, and further, **there is no indication that Your Occupation requires pushing or pulling greater than 50 lbs.**  In addition, driving and climbing are not considered essential functions of Your Occupation. **Therefore, the additional restrictions outlined by Dr. Rieser would not have prevented you from performing the Essential Duties of Your Occupation.**

(*Id.* (emphases added); *see also* HART3-4.)  Hartford informed McDonel that she had exhausted her administrative remedies and also advised her of the right bring a claim in court under ERISA.  (HART63-64).  There is no evidence that Ager conducted additional factual investigation after McDonel filed her appeal.

## ANALYSIS

## I.    SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.      EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A.      Issue Exhaustion

The Court must first determine if McDonel has adequately preserved the legal issues that she raises in this action.  ERISA possesses a judicially-created exhaustion requirement.  "'Where a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, his claim for relief is barred.'" *Chorosevic v. MetLife Choices*, 600 F.3d 934, 941 (8th Cir. 2010) (quoting *Layes v. Mead Corp.*, 132 F.3d 1246, 1252 (8th Cir. 1998)).  An exhaustion requirement applies "so long as the employee has notice of the [administrative appeal] procedure, even if the plan, insurance contract, and denial letters do not explicitly describe the review procedure as mandatory or as a prerequisite to suit."  *Wert v. Liberty Life Assurance Co. of Boston, Inc.*, 447 F.3d 1060, 1063 (8th Cir. 2006).

In her administrative appeal, McDonel raised the most important issues relevant to this action.  Her appeal explicitly disputed whether Hartford had adequately considered her new permanent restrictions imposed in 2010.  (*See* HART67.)  In doing so, she also implicitly addressed whether Hartford had failed to compare these restrictions to the duties involved in her occupation.[5]  (*See id.*)

The issues that McDonel did not raise in her administrative appeal are also not waived, however, because ERISA does not require issue exhaustion.  The Eighth Circuit has suggested that ERISA "does not require either issue or theory exhaustion; it requires

---

[5] Because McDonel adequately raised these issues, she has established that Hartford abused its discretion even if all of her other arguments are waived.  *See* Part III, *infra*.

**only** claim exhaustion." *Chorosevic*, 600 F.3d at 942 (quoting *Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 186-87 (3d Cir. 1984)) (emphasis original). This indication is consistent with ERISA regulations requiring plan administrators to provide a "**full** and fair review of the claim and the adverse benefit determination" in the event of an appeal, regardless of the issues raised. *See* 29 CFR § 2560.503-1(h)(1) (emphasis added). Policy considerations also weigh against requiring issue exhaustion because policyholders often cannot fully respond to succinct benefit denials. *See Khoury v. Grp. Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) (noting that initial denial letters from insurance companies are often "succinct" and that more information is required for a "complete record" of the administrator's decision). Accordingly, the Court finds that McDonel was not required to exhaust all legal issues in her administrative appeal. The Court will next explain why, even if Hartford could have imposed an issue exhaustion requirement on McDonel, it did not provide her with sufficient notice to do so.

### B.    Lack of Adequate Notice

In this action, McDonel explicitly raised for the first time that Hartford did not gather enough information to define her occupation and that Hartford inappropriately considered Andersen's modifications to her job. She also now raises Hartford's failure to investigate her knee condition. The Court finds that McDonel did not waive these issues because Hartford provided inadequate notice of (1) the reasons why it denied McDonel's claims and (2) the existence of an issue exhaustion requirement.

First, Hartford did not provide McDonel with sufficient notice of the reasons for her claim denial.  ERISA states that every employee benefit plan shall:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.[6]  Despite these requirements, Hartford's denial letter did not include a description of McDonel's occupation or the essential duties that McDonel could perform. (*See* HART81.)  Hartford also did not state the specific modifications that it used to define McDonel's occupation.[7]  These omissions deprived McDonel of sufficient information to dispute Hartford's analysis of her occupation and her ability to perform its essential duties.  Because Hartford did not provide "adequate notice" of the "specific reasons" for its denial of coverage, Hartford may not now require McDonel to have exhausted all issues.  *See* 29 U.S.C. § 1133.

Second, Hartford's LTD policy did not demand that McDonel raise all of the issues she wished to appeal.  The policy states that an applicant "**may** submit written

---

[6] *See also Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) ("In simple English, what this regulation calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries.  If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial; if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it.")

[7] The denial letter stated that, because McDonel had been working full time with the Dr. Rieser's restrictions from 2007 "for at least the past 15 years," "this job would be considered Your Occupation."  (HART81.)  It noted no specific modifications that Hartford had considered, however.

comments, documents, records, or other information related to [her] claim" when appealing a benefit denial.  (HART41, 81-82) (emphasis added).[8]  Given this permissive language, it would be unfair to require issue exhaustion before a "full and fair review" of McDonel's appeal.  *See* 29 CFR § 2560.503-1(h)(1).  Accordingly, the Court finds that McDonel has not waived any of the issues that she raises in this action.

## III.    ABUSE OF DISCRETION

### A.    Standard of Review

To decide if either party is entitled to summary judgment, the Court must determine if Hartford abused its discretion in denying McDonel's claim.  "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator  . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  If the plan confers discretion on the plan administrator, a deferential abuse-of-discretion standard of review applies.  *Bounds v. Bell Atl. Enters. Flexible Long-Term Disability Plan*, 32 F.3d 337, 339 (8th Cir. 1994) (citing *Firestone*, 489 U.S. at 111-113).  Courts apply the abuse-of-discretion standard only if the plan contains "explicit discretion-granting language."  *Id.*

In this case, there is no dispute that the administrator has discretion to interpret the provisions of the Hartford's LTD policy.  The policy states that Hartford has "full

---

[8]  *See also* 29 CFR § 2560.503-1(h)(ii) (stating that employee benefit plans must "[p]rovide claimants **the opportunity** to submit written comments, documents, records, and other information relating to the claim for benefits") (emphasis added).

discretion and authority to determine eligibility and benefits and to construe and interpret all terms and provisions of the policy." (HART43.) Accordingly, the Court will review Hartford's denial of benefits under an abuse of discretion standard.

### B.       Interpretation of the Plan

#### 1.       Standard

Under an abuse of discretion standard, the proper inquiry is whether the decision by the plan administrator to deny benefits is reasonable. *King v. Hartford Life and Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir. 2005). The reasonableness of the administrator's interpretation is assessed by whether the decision to deny benefits is supported by substantial evidence, *id.* at 999, that is, "more than a scintilla but less than a preponderance" of the evidence.[9] *Smith v. Unum Life Ins. Co. of Am.*, 305 F.3d 789, 794 (8th Cir. 2002). During this inquiry, the Court "consider[s] only the evidence before the plan administrator when the claim was denied." *Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 642 (8th Cir. 2002).

When the plan administrator is also the insurer, it has an inherent conflict of interest. *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 934 (8th Cir. 2010). "Where an

---

[9] The Eighth Circuit has identified factors for use in determining whether a plan administrator's interpretation of the policy is reasonable including: (1) whether the interpretation is consistent with the goals of the plan; (2) whether the interpretation renders any language in the plan meaningless or internally inconsistent; (3) whether the interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the plan administrator has interpreted the provisions at issue consistently; and (5) whether the interpretation is contrary to the clear language of the plan. *King*, 414 F.3d at 999; *Finley v. Special Agents Mut. Benefit Ass'n*, 957 F.2d 617 (8th Cir.1992). Though each factor is relevant, the Eighth Circuit has observed that "significant weight should be given to . . . a misinterpretation of unambiguous language in a plan." *Lickteig v. Bus. Men's Assurance Co. of Am.*, 61 F.3d 579, 585 (8th Cir. 1995).

insurer has a history of biased claims administration, the conflict may be given substantial weight, but where the insurer has taken steps to reduce the risk that the conflict will affect eligibility determinations, the conflict should be given much less weight." *Id.* A court gives the conflict "some weight" if there is little evidence about an insurance company's claims administration or its efforts to reduce potential bias created by a conflict. *Id.* (citing *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)).

In this action, the investigator and the appeal specialist both worked for Hartford, creating a conflict.[10]   Hartford has produced no evidence regarding its claims administration history or its attempts to alleviate any bias produced by the conflict. Accordingly, the Court will give the conflict "some weight," although this factor is not determinative. *See Darvell*, 597 F.3d at 934.

## 2.        Hartford's Abuse of Discretion

Using the above standard, the Court must determine if Hartford abused its discretion. A plan administrator abuses its discretion if it fails to identify and request additional information needed to make a reasoned decision.[11]   Administrators may not rely on "slivers of information" from a record, but must instead "evaluate the available evidence in its entirety before reaching a determination."   *Willcox v. Liberty Life*

---

[10] The investigator making the initial eligibility determination was located in the same Minneapolis Disability Claim Office as the appeal specialist performing the review, further demonstrating a conflict.  (*See* HART000063, 64, 79-82.)

[11] *See* 29 C.F.R. § 2560.503-1(g)(iii) (requiring administrators to notify the claimant of "any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary"); *Chorosevic*, 600 F.3d at 944.

*Assurance Co. of Boston*, 552 F.3d 693, 702 (8th Cir. 2009) (internal quotation marks omitted).

Hartford primarily based its denial of McDonel's application on a short description of the "Value Stream I Associate" position, contained in Simpson's e-mail, and on the job restrictions imposed by Dr. Rieser.   Using this information, Hartford determined that McDonel's job restrictions did not meaningfully affect the essential duties of the "Value Stream I Associate" occupation.   The Court finds that this decision was a flagrant abuse of discretion for two reasons.

### a.    Lack of Information about McDonel's Occupation

First, Hartford did not possess an adequate description of McDonel's occupation and her essential duties.   The description of the "Value Stream I Associate" position in the record is from an unknown source and has relatively little information in it.[12]   It leaves uncertain, for example, whether McDonel's position required her to frequently turn and twist, to reach into a large bin to retrieve materials, or to pull, lift, carry, or push significant weight.   (*See* HART109.)   Furthermore, Hartford did not identify whether Andersen had implemented a new "rotating system" that changed McDonel's position by August 2009 and, if so, how this rotation may have affected her occupation.   The Court finds no basis for Hartford to reliably infer the essential duties of McDonel's position.

---

[12] An employee's ability to perform some, but not all, of her occupation's essential duties is an insufficient basis for an administrator to deny benefits.   *Seitz v. Metro. Life Ins. Co.*, 433 F.3d 647, 651 (8th Cir. 2006).

There is also no evidence that Hartford identified, as required under the LTD policy, McDonel's "occupation as it is recognized in the general workplace." (*See* HART43-47.)   The only job descriptions in the record are (1) a list of certain duties McDonel performed, contained in Simpson's e-mail, and (2) what appears to be an example of one task that Andersen's window assemblers perform.  (*See* HART109-11.) The Court finds no basis to conclude that these descriptions defined the essential duties of window assemblers at Andersen, much less the essential duties of window assemblers in the general workplace.

Hartford's failure to investigate the "general workplace" duties of McDonel's occupation is further demonstrated by its statement to McDonel that "your modified position is considered Your Occupation."  (*See* HART63-64.)   Hartford claims that Andersen accommodated McDonel's disabilities for many years, and that Hartford considered these accommodations when defining McDonel's occupation.  Yet the record does not indicate what accommodations Andersen provided to McDonel, other than an assertion that Andersen accommodated her 2007 restrictions in some way.  (*See* HART81.)   The record also does not show whether Andersen's accommodations were legally required or whether they would have been regularly or reasonably provided in the general workplace.  The Court finds that, without this information, it was impossible for Hartford to determine whether the McDonel's "modified position" was consistent with her "occupation as it is recognized in the general workplace."  *See Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 397 (7th Cir.  2009) (noting "bare conclusions are not a rationale" sufficient to satisfy ERISA) (internal quotation marks omitted).

**b.      Lack of Information about McDonel's Restrictions**

Second, Hartford did not adequately investigate or consider McDonel's work-related restrictions.  Hartford discounted the new restrictions imposed by Dr. Rieser in 2010, declaring that they were "the same restrictions and limitations" as those from 2007. (HART5, 79.)  The restrictions, however, were not the same.  Aside from conclusory statements, it has provided no explanation for why any administrator could view these restrictions as the same.  Furthermore, no physician – or non-physician, for that matter – has reviewed a comprehensive description of McDonel's occupation and determined that she can fulfill its essential duties with her limitations.[13]  Indeed, the most reliable record evidence, the opinion of McDonel's employer, indicates that McDonel could not perform her occupation.   (*See* HART134) ("Your permanent restrictions prevent you from performing the essential functions of the Value Stream I position, with or without reasonable accommodation.").   There is not enough evidence for any reasonable administrator to have determined that McDonel's 2010 restrictions did not affect her occupation's essential duties.

Hartford's inadequate investigation is particularly evident because McDonel indicated that a "permanent weight restriction" prevented her from doing her job.

_____

[13] *See* 29 CFR § 2560.503-1(h)(3)(iii) ("[I]n deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment . . . the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment[.]"); (HART56) ("Any adverse benefit determination will be in writing and include . . . if denial is based on a medical judgment, either (i) an explanation of the scientific or clinical judgment for the determination . . . or (ii) a statement that such explanation will be provided to you free of charge upon request.").

(HART109.)  Hartford claims that "there is no indication that [McDonel's] Occupation requires pushing or pulling greater than 50 lbs.," but Hartford also possesses no reliable evidence that her occupation did **not** include pushing or pulling this amount.  (*See* HART3-4, 63-64.)

The lack of evidence supporting Hartford's decision is further demonstrated by its discounting of McDonel's 2010 restrictions because she "chose not to pursue additional treatment" for her back.  (*See* HART64.)  Hartford never investigated if McDonel's knee problems prohibited her from seeking surgery.  (*See* HART8.)  Further, Hartford cannot deny McDonel benefits because she continued to work for some years with a back injury or because Andersen provided some kind of accommodations to her during this time.  *See Seitz*, 433 F.3d at 651 (stating that courts should not "unfairly punish individuals who test their limitations and attempt to keep working before seeking benefits").

In sum, the record is replete with relevant information that Hartford did not know.  It did not know the essential functions of McDonel's job; it did not know about her occupation in the general workplace; it did not know if her occupation had changed; it did not know how Andersen had accommodated her; it did not know the limitations imposed by her knee condition; and it did not know how her medically-recommended restrictions affected her occupation.  Hartford may have had "little incentive to come to grips with" McDonel's claims, but it had the obligation to do so.  *See Booton*, 110 F.3d at 1463 n.6.  The Court finds that Hartford made its decision "blindfolded" and, accordingly, abused its discretion.  *See id.* at 1463.

## IV.   REMEDY

Although the Court has determined that Hartford abused its discretion, there is not enough evidence in the record to determine if McDonel is entitled to LTD benefits. The record does not adequately demonstrate the functional limitations associated with McDonel's injuries or the essential duties of her occupation. The Court may not gather additional evidence outside of the claim file. *Brown v. Seitz Foods, Inc.*, 140 F.3d 1198, 1200 (8th Cir. 1998). Accordingly, the Court will remand this case to Hartford for further administrative review consistent with this opinion. *See, e.g.*, *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 373 (6th Cir. 2009) ("[A]n incomplete factual record provides a basis to remand the case to the plan administrator."). Because the Court will issue a remand, it reserves judgment on attorney's fees, costs, expenses, and prejudgment interest.


## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Plaintiff's long-term disability benefits claim is **REMANDED** to Defendant for further administrative review consistent with this opinion.

2.     This action is **STAYED** pending a final decision by Defendant. Within thirty (30) days of a final decision by Defendant, either party may move to lift the stay and renew their dispositive motions based on the administrative record.

3.      Defendant's Motion for Summary Judgment [Docket No. 12] is **DENIED**

**without prejudice**.

4.      Plaintiff's Motion for Summary Judgment [Docket No. 17] is **DENIED**

**without prejudice**.

5.      Both parties shall be under an obligation to notify this Court by written

correspondence within thirty (30) days after Defendant reaches a final decision regarding

Plaintiff's long-term disability benefits claim.

DATED:   June 25, 2012                         _____ s/ John R. Tunheim _____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                              United States District Judge